UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CENTER FOR INQUIRY, INC., REBA        )
BOYD WOODEN, JOHN KIEL, and           )
MICHELLE LANDRUM,                     )
                                      )
            Plaintiffs,               )
                                      )
      vs.                             )          1:12-cv-00623-SEB-DML
                                      )
CLERK, MARION CIRCUIT COURT, and )
PROSECUTOR, MARION COUNTY,            )
INDIANA,                              )
                                      )
            Defendants.               )

**ENTRY**

On June 11, 2012, Plaintiffs filed their Complaint [Docket No. 1] seeking both a

preliminary injunction, pursuant to Federal Rule of Civil Procedure 65, and permanent

injunctive relief.   *See also* Docket No. 16.   The Center for Inquiry, Inc. ("CFI"), Reba

Boyd Wooden, John Kiel, and Michelle Landrum seek to bar Defendants, the Clerk of the

Marion Circuit Court ("the Clerk") and the Marion County Prosecutor ("the Prosecutor"),

from enforcing Indiana Code § 31-11-6-1 against Plaintiffs on constitutional grounds.

With the parties' consent, the Court advanced the hearing on preliminary injunctive relief

to include final consideration of the merits.   *See* Fed. R. Civ. P. 65(a)(2) ("Before or after

beginning the hearing on a motion for a preliminary injunction, the court may advance the

trial on the merits and consolidate it with the hearing.").   The parties appeared before the

1

Court on October 22, 2012 to present evidence and oral argument.   The Court now enters its findings of fact and conclusions of law, pursuant to Federal Rule of Civil Procedure 52. Having considered the parties' briefing, documentary evidence, arguments, as well as the controlling principles of law, for the reasons explicated herein, the Court DENIES Plaintiffs' request for permanent injunctive relief.   A final judgment shall enter accordingly.

## I.   Findings of Fact

### A.   Background on Marriage

Our nation's High Court has historically recognized marriage as a "vital personal right[] essential to the orderly pursuit of happiness," *Loving v. Virginia*, 388 U.S. 1, 12 (1967), "fundamental to the very existence and survival of the [human] race," *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942), and even "the most important relation in life."   *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978) (quoting *Maynard v. Hill*, 125 U.S. 190, 205 (1888)).   Because marriage is also "a social relation subject to [each] [s]tate's police power," *Loving*, 388 U.S. at 8, the requirements for what constitutes a legally valid marriage differ from state to state.   Couples who wish to marry in Indiana and be recognized as spouses under Indiana law must clear two hurdles:   licensure and solemnization.   Ind. Code §§ 31-11-4-1, -3, -13.   Procedurally, the couple must first procure a marriage license from the clerk of the circuit court of either individual's county of residence, or, if neither individual resides in Indiana, from the clerk of the circuit court of the county where the marriage will be solemnized.   *Id.* § 31-11-4-3.   Every marriage

2

license issued in Indiana must include two certificates of marriage attached to it:   one

marked "Original," and the other marked "Duplicate."   *Id.* § 31-11-4-15.

After securing the required license, individuals who intend to marry one another

must present their marriage license to an individual who is authorized by Indiana Code §

31-11-6-1 ("the Solemnization Statute") to solemnize marriages.   Ind. Code § 31-11-4-13.

Pursuant to the Solemnization Statute, the authority to solemnize marriage is vested in the

following categories of persons or entities:

> (1) A member of the clergy of a religious organization (even if the cleric does not
> perform religious functions for an individual congregation), such as a minister of
> the gospel, a priest, a bishop, an archbishop, or a rabbi.
> (2) A judge.
> (3) A mayor, within the mayor's county.
> (4) A clerk or a clerk-treasurer of a city or town, within a county in which the city or
> town is located.
> (5) A clerk of the circuit court.
> (6) The Friends Church, in accordance with the rules of the Friends Church.
> (7) The German Baptists, in accordance with the rules of their society.
> (8) The Bahai faith, in accordance with the rules of the Bahai faith.
> (9) The Church of Jesus Christ of Latter Day Saints, in accordance with the rules of
> the Church of Jesus Christ of Latter Day Saints.
> (10) An imam of a masjid (mosque), in accordance with the rules of the religion of
> Islam.

*Id.* § 31-11-6-1.   The individual who "solemnizes" the marriage has three related

responsibilities:   (1) completing the original and duplicate marriage certificates; (2)

presenting the original certificate to the couple; and (3) "[n]ot later than thirty (30) days

after the date of the marriage," filing the duplicate certificate and the actual marriage

license with the clerk of the circuit court who issued the couple's license.   *Id.* §

31-11-4-16.   Under Indiana law, anyone who discharges these duties without authority to

3

do so under the Solemnization Statute commits a Class B misdemeanor.   *Id.* § 31-11-6-1.

## B.   The Parties

Plaintiff CFI is an international not-for-profit group headquartered in New York. The organization, which has existed in its present form since 1978, claims a membership of approximately 24,000 in the United States.   Its mission is "to foster a purely secular society based on science."   Pls.' Mem. at 4.   Accordingly, CFI supports the use of the scientific method in examining religious claims and denies that a supernatural source of values is a prerequisite to a meaningful, valuable, or ethical life.   Wooden Aff. ¶¶ 3-6. The system of thought promoted by CFI, commonly known as "secular humanism," *see* Wooden Dep. at 12, typically describes an ideological stance based, *inter alia*, on the following principles:

- [a] conviction that dogmas, ideologies, and traditions, whether religious, political or social, must be weighed and tested by each individual and not simply accepted on faith[;]
- [c]ommitment to the use of critical reason, factual evidence, and scientific methods of inquiry, rather than faith and mysticism, in seeking solutions to human problems and answers to important human questions[;] . . . .
- [a] constant search for objective truth, with the understanding that new knowledge and experience constantly alter our imperfect perception of it[;] . . . . [and]
- [a] search for viable individual, social and political principles of ethical conduct.

Defs.' Ex. C (document entitled "What Is Secular Humanism?").

A local CFI delegation ("CFI-Indiana") of approximately 230 active members,[1]  all of whom are members of the national organization, is based in Indianapolis.   Wooden Aff.

---

[1]CFI-Indiana also maintains an email contact list of over 1,800 individuals who have expressed interest in the organization.   Wooden Aff. ¶ 12.

¶ 12.   As a branch of the national CFI, CFI-Indiana espouses its umbrella organization's

core values.   Among these beliefs is the appreciation that "the basic components of

effective morality and a model for living a good life—integrity, trustworthiness,

benevolence, and fairness—are universally recognized sources of human values."   *Id.* ¶ 8.

To advance this philosophy in Indianapolis, CFI-Indiana authors and distributes

publications explaining secular humanism and hosts classes, community gatherings, and

meetings addressing a wide variety of social topics.   Pls.' Mem. at 4; *see also* Wooden

Dep. at 51 (noting the group's affinity for discussing "things involving church/state

separation").   CFI-Indiana has also offered various "secular celebrations"—*e.g.*,

commitment ceremonies, memorial observances, and infant naming services—during its

seven-year history.[2]   Wooden Dep. at 55-56.   The organization sponsors these events in

an effort to provide its members with "meaningful ceremonies that express their

non-religious life philosophies and values."   Pls.' Mem. at 6.

As of the date of our hearing, Plaintiffs Kiel and Landrum, both members of

CFI-Indiana, were engaged to be married and planned to wed "in the near future."   Pls.'

Mem. at 9.   Although they had recently relocated to Kentucky, it was their intent to marry

in Indianapolis, Indiana, where many of their family members and friends reside.   They

view the social and legal benefits associated with marriage as desirable and, as Ms.

Landrum has testified, they "want[ed] to get married [for] the same reason[s] everybody

---

[2]Although the group now operating as CFI-Indiana came into being in 1999, it was
originally a subgroup of the Council for Secular Humanism.   CFI-Indiana did not acquire CFI
branding rights or recognition as a "CFI community" until 2005.   Wooden Dep. at 46.

else wants to get married . . . [I]t's a . . . culturally recognized form of couple bonding."
Kiel & Landrum Dep. at 12.   Accordingly, they fashioned a wedding ceremony reflecting
their shared values, ethics, and beliefs.   They view as "extremely important" to their
wedding ceremony that their officiant "share [their] beliefs and [be] able to assist [them] in
structuring the ceremony in a way that affirm[ed] [their] philosophy."   Kiel & Landrum
Aff. ¶ 10.   Consequently, they planned for Plaintiff Reba Boyd Wooden, their longtime
friend and mentor, to perform the ceremony.   Pls.' Mem. at 9.   Apparently deciding not to
wait out the completion of this judicial process, they recently informed the Court that, as of
late October 2012, they are now legally married.   Docket No. 33.

Ms. Wooden, a retired teacher and counselor, is CFI-Indiana's current Executive
Director.   Pls.' Mem. at 5; Wooden Aff. ¶ 15.   She asserts that when she "started the
group," she served the organization in a volunteer capacity.   Wooden Dep. at 57.   In
2001, before the group became an official CFI community, she obtained a "humanist
celebrant" certification enabling her to perform weddings and sign marriage licenses in
Indiana.   She was certified in this capacity by the Humanist Society, which is a chartered
religious organization.   *Id.*   Although Ms. Wooden alleges that it was not her preference
to be certified by a society that is officially faith-based, she maintains that this course of
action "was the only way . . . [she could] actually solemnize marriages in Indiana."   *Id.* at
58.   In other words, while acknowledging that "[she] could do ceremonies" without such
certification, she notes that being a "humanist celebrant" allowed her to complete the
administrative tasks that comprise "solemnization" of an Indiana marriage.   *See id.*   Ms.

6

Wooden estimates that she has participated in at least fifty marriages in her capacity as a "humanist celebrant." *Id.* at 57.

### C.  The Secular Celebrant Program

Ms. Wooden became an employee of CFI-Indiana in 2007.   Wooden Dep. at 60. "[B]ecause [CFI] and its affiliates are very adamant about not being a religion . . . [and] no employee of theirs can operate under any religious certification," she relinquished her certification with the Humanist Society.   *Id.* at 58.   However, as Executive Director of CFI-Indiana, Ms. Wooden continues to receive requests from members and non-members to preside over their marriage ceremonies.   Pls.' Mem. at 5.   Such requests made clear to her the need for certified individuals who could officiate at weddings "for persons who wish to have meaningful ceremonies that express their non-religious life views."   Wooden Aff. ¶ 20.   Thus, she developed CFI's national Secular Celebrant Program so that properly trained CFI members could "conduct marriage ceremonies, same-sex commitments, memorials, and other rites of passage."   *Id.* ¶ 18.   Ms. Wooden, now the Director of CFI's Secular Celebrant Program, is herself a *bona fide* certified Secular Celebrant.

Under Ms. Wooden's direction, CFI has offered full-day training workshops for Secular Celebrant certification since 2009.   These workshops are open to any CFI member who has been recommended for the program by the director of her local CFI branch.   A member who is not affiliated with a local CFI chapter must submit two letters of recommendation and an essay summarizing her "life stance."   Wooden Aff. ¶¶ 25, 29. Other training requirements include an interview with the program's co-directors, approval

7

of a CFI executive, and payment of an initial and yearly fee of $49.   Wooden Interrog. No.

14(c)(4)-(6).   A typical eight-hour Secular Celebrant workshop covers a broad variety of

topics:[3]   CFI's general philosophy; legal aspects of marriage celebrations, including

state-specific limitations; techniques for writing meaningful ceremonies; and simulations

of marriages and other ceremonies that often mark "life passages."   Wooden Aff. ¶¶

26-27, 30; Pls.' Mem. at 7.   During training, Ms. Wooden stresses, prospective Secular

Celebrants learn that "we don't do religious things."   Wooden Dep. at 130.

Since the program's inception, fifty-three people have applied to attend a CFI

Secular Celebrant training program.   There are presently eight certified Secular

Celebrants in Indiana and twenty-three in other states.   Wooden Interrog. No. 14(e).

According to Ms. Wooden, each year approximately twelve persons request that a Secular

Celebrant preside at their Indiana marriage ceremony.   *Id.* No. 8.   One CFI-Indiana

Secular Celebrant, an attorney, has presided over at least two wedding ceremonies in

Indiana and was able to solemnize these marriages based on her appointment as a judge *pro*

*tempore*.   *Id.* No. 12; *see* Ind. Code §§ 31-11-6-1(2) (listing "judge" among the persons

who may solemnize marriages).   Ms. Wooden estimates that "[o]ther CFI Secular

Celebrants have presided over at least nine weddings [in Indiana], although they have not

been able to solemnize them."   Wooden Interrog. No. 12.   She characterizes Secular

Celebrants' inability to solemnize marriages in Indiana as a "major impediment" to three

_____

[3]Ms. Wooden asserts that there is no variation among CFI branches concerning training. "This is a national program[,] and therefore all training is the same."   Wooden Interrog. No. 14(d).

classes of people:   first, to non-religious couples, who cannot be married in ceremonies that "fully represent" their values; second, to herself and other Secular Celebrants, who cannot express or publicize their views "through the wedding ceremony;" and third, to CFI itself, which is impeded in its efforts to advance its principles.   Pls.' Mem. at 7.

Ms. Wooden has explicitly acknowledged that "it is clear that the [Solemnization S]tatute prohibits CFI Secular Celebrants from solemnizing marriages, but not from officiating."   Wooden Interrog. No. 11.   In fact, there are several readily available avenues by which a Secular Celebrant may facilitate a marriage ceremony in Indiana:   she may (1) preside at a wedding and then instruct the couple to go before one of the individuals listed in the Solemnization Statute to have the marriage solemnized; (2) become a member of the "clergy" by seeking immediate Internet ordination from the Universal Life Church; or (3) seek certification to solemnize marriages from the Humanist Society.   Pls.' Mem. at 8.   Ms. Wooden is aware of these options but has rejected each as antithetical to her views, standing firm in her belief that neither she nor any other Secular Celebrant is "clergy," as "the concept of 'clergy' is a religious one[,] and CFI is *areligious*."   Wooden Aff. ¶ 38 (emphasis added).

### D.   Plaintiffs' Claims

Plaintiffs have filed this lawsuit to challenge the constitutionality of the Indiana Solemnization Statute, Ind. Code § 31-11-6-1, and to secure a judicial declaration that the Solemnization Statute violates the Establishment Clause of the First Amendment to the U.S. Constitution.   To that end, they contend that the statute "creates a preference for

religion over non-religion . . . and therefore denies [them] rights secured by the First Amendment."   Compl. ¶ 46.   Further, in seeking a declaration that the Solemnization Statute does not comport with the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, Plaintiffs assert that the statute "extends the right to officiate at weddings to religious leaders and allows persons of faith to be married by religious leaders of their choice while denying this same right to [them]."   *Id.* ¶ 47.   Accordingly, Plaintiffs seek a declaration that:   (1) the Solemnization Statute is unconstitutional; (2) CFI-trained Secular Celebrants may solemnize marriages in Indiana; and (3) the Prosecutor is prohibited from pressing criminal charges against any Secular Celebrant who has solemnized an Indiana marriage.

## II.   Conclusions of Law

A permanent injunction, as opposed to a preliminary injunction or a temporary restraining order, is not a provisional remedy; it is a final judgment.   *Walgreen Co. v. Sara Creek Prop. Co.*, 966 F.2d 273, 275 (7th Cir.1992).   Thus, when the moving party seeks a permanent injunction, the threshold issue "is . . . whether he has *in fact* succeeded on the merits."   *Plummer v. Am. Inst. of Certified Pub. Accountants*, 97 F.3d 220, 229 (7th Cir. 1996) (citing *Amoco v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)).   Permanent injunctive relief is warranted only where the plaintiff demonstrates:   (1) actual success on the merits; (2) an inadequate remedy at law; (3) that the balance of harms between the parties favors granting the injunction; and (4) that such permanent relief will not harm the public interest.   *Plummer*, 97 F.3d at 229; *Cerna v. Prestress Servs. Indus. LLC*, No.

1:10-cv-188, 2011 WL 1884547, at *11 (N.D. Ind. May 18, 2011); *Chi. Sch. Bd. Reform Bd. of Trs. v. Diversified Pharm. Servs.*, 40 F. Supp. 2d 987, 991 (N.D. Ill. 1999).   A showing of irreparable injury is not required; "it is only one basis for showing the inadequacy of the legal remedy."   *Crane ex rel. Crane v. Ind. High Sch. Athletic Ass'n*, 975 F.2d 1315, 1326 (7th Cir. 1992).

### A.   First Amendment Claim

The First Amendment[4] provides, in pertinent part, that government "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."   U.S. CONST. amend. I.   Plaintiffs contend that Indiana's Solemnization Statute violates the Establishment Clause of the First Amendment by extending a benefit (namely, the ability to solemnize marriages) only to religious organizations.   Pls.' Mem. at 14.   Defendants rejoin that "the remedy CFI seeks . . . implies a claim to vindicate positive rights rather than to restrain government action," and, consequently, is not a true Establishment Clause claim.   The parties concur in the view that the Solemnization Statute cannot be interpreted to suggest that everyone has a First Amendment right to solemnize marriages.   Thus, we must determine whether CFI possesses such a right, which is being unjustly curtailed by Indiana law.

Challenges brought pursuant to the Establishment Clause are based on "the principle that the First Amendment mandates government neutrality between religion and

---

[4]  The First Amendment was made applicable to the States by the Due Process Clause of the Fourteenth Amendment.

religion, and between religion and nonreligion." *McCreary Cnty. v. ACLU of Ky.*, 545

U.S. 844, 860 (2005).   In *Lemon v. Kurtzman*, 403 U.S. 602 (1971), the Supreme Court

enunciated a tripartite test designed to evaluate whether a governmental practice violates

the Establishment Clause.   The "*Lemon* test" makes a practice unconstitutional if it "(1)

lacks a legitimate secular purpose; (2) has the primary effect of advancing or inhibiting a

religion; or (3) fosters an excessive entanglement with religion." *Doe ex rel. Doe v.

Elmbrook Sch. Dist.*, 687 F.3d 840, 849 (7th Cir. 2012) (citing *Lemon*, 403 U.S. at 612-13).

Although the *Lemon* test "remains the prevailing analytical tool for the analysis of

Establishment Clause claims," *Books v. City of Elkhart*, 235 F.3d 292, 301 (7th Cir. 2000),

the Supreme Court has also approved the "endorsement test" for assessing Establishment

Clause claims.   Justice O'Connor proposed the endorsement test through her concurrence

in *Lynch v. Donnelly*, 465 U.S. 668 (1984), stating, "What is crucial is that a government

practice not have the effect of communicating a message of government endorsement or

disapproval of religion." *Lynch*, 465 U.S. at 692 (O'Connor, J., concurring).   The

endorsement test has been construed as part of *Lemon*'s second prong; "under this test, [the

court] must 'assess[] the totality of the circumstances . . . to determine whether a

reasonable person would believe that [the practice] amounts to an endorsement of

religion." *Doe*, 687 F.3d at 850 (quoting *Books*, 235 F.3d at 304); *see also Cnty. of

Allegheny v. Am. Civil Liberties Union*, 492 U.S. 573, 592-93 (1989) ("[W]e have paid

particularly close attention to whether the challenged governmental practice either has the

purpose or effect of 'endorsing' religion, a concern that has long had a place in our

12

Establishment Clause jurisprudence.").

Here, Plaintiffs contend that the Solemnization Statute does not pass constitutional muster because it fails this "effects" prong of the *Lemon* test.   Specifically, they allege that the statute distributes a non-incidental[5] benefit to religious groups which it withholds from non-religious groups.   Pls.' Mem. at 12 (noting that "[r]eligious leaders . . . are allowed to solemnize marriages [but] . . . [n]on-religious persons are not.").   Plaintiffs admit that CFI has no "official" stance on marriage, *see* Wooden Dep. at 104, but maintain that many CFI-Indiana members value a broad gamut of life-enhancing rituals like marriage as part of their "deep-seated, albeit not religious" views.   Pls.' Mem. at 15.   For this reason, Plaintiffs have argued that resolution of their claims requires the Court to analogize CFI-Indiana to a religious group.   *Id.*

Plaintiffs have relied heavily on language from *Kaufman v. McCaughtry*, 419 F.3d 678 (7th Cir. 2005), and *Torcaso v. Watkins*, 367 U.S. 488 (1961), to support their contention that, for purposes of this motion, CFI stands on equal footing with other organized religions.   The relevant excerpt from *Kaufman* states as follows:

> Without venturing too far into the realm of the philosophical, we have suggested in the past that when a person sincerely holds beliefs dealing with issues of "ultimate concern" that for her occupy a "place parallel to that filled by . . . God in traditionally religious persons," those beliefs represent her religion.   We have already indicated that atheism may be considered, in this specialized sense, a religion.

---

[5]This is an important qualifier because of the Supreme Court's holding that "a religious organization's enjoyment of merely 'incidental' benefits does not violate the prohibition against the 'primary advancement' of religion."   *Widmar v. Vincent*, 454 U.S. 263, 273 (1981).

*Kaufman*, 419 F.3d at 681-82 (internal citations omitted).   In Plaintiffs' view, the

*Kaufman* holding represents the Seventh Circuit "follow[ing] the Supreme Court's lead"

after *Torcaso*.   Plaintiffs direct the Court's attention to Footnote 11 from *Torcaso*, in

which Justice Black remarked that "[a]mong religions in this country which do not teach

what would generally be considered a belief in the existence of God are Buddhism,

Taoism, Ethical Culture, Secular Humanism and others."   *Torcaso*, 367 U.S. at 495 n.11

(citations omitted).   Plaintiffs have also urged the Court to disregard the circumstances

involved in these two cases (appeals of prohibition on prison-based atheist study group and

denial of notary license for refusal to declare belief in God, respectively) or the way the

parties couched the rights.   To that end, they aver that "[w]hether the State . . . in *Torcaso*

was deemed to have been restrained from violating the notary applicant's constitutional

rights or whether the applicant was deemed to have vindicated a positive right . . . is just

different sides of the same coin.   In any event, the Establishment Clause was violated."

Pls.' Reply at 3-4.   We disagree with Plaintiffs' summation of First Amendment

jurisprudence for purposes of resolving the issues before us..

As a preliminary matter, we find inapposite Plaintiffs' avowal that, "for this

purpose[,] CFI must be considered to be analogous to a religion," Pls.' Mem. at 15.   The

parties have stipulated that CFI *is not a religion*.   Consequently, the Court will not

perform a searching analysis as to the boundaries of the beliefs CFI's various members

may (or may not) embrace.   The Supreme Court has clearly established that "the judicial

process is singularly ill-equipped to resolve such [issues] in relation to the Religion

14

Clauses" and that "[c]ourts are not arbiters of scriptural interpretation."   *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715-16 (1981).   We find it similarly inappropriate to require the Prosecutor to determine if a group not listed in the Solemnization Statute—religious, quasi-religious, or otherwise—"qualifies" under the statute.   A prosecutor is no more qualified to analyze a group's beliefs and the centrality thereof than this court.   Returning to a question the Court posed at oral argument, we will not declare that CFI is a religion when it suits the group to be classified as one.   Truly, CFI asks too much in making this argument.   The group's recurrent insistence that it is not a religion forecloses the analysis they have entreated the Court to make.   We must therefore treat CFI precisely as we would any other non-religious entity.   In other words (indeed, in Plaintiffs' *own* words), we hold that "CFI is not a religious organization – it is purely secular."   Pls.' Mem. at 4.

Although Plaintiffs have attempted to ground their claim in the Establishment Clause, we find persuasive Defendants' argument that "[Plaintiffs'] type of individual rights claim does not fit the typical Establishment Clause model."   Defs.' Br. at 11.   We likewise cannot reconcile Plaintiffs' requests (1) to have Indiana's Solemnization Statute deemed an impermissible endorsement of religion, and (2) to be *included* in this allegedly offensive statute.   Presumably, even if we were to analogize CFI to a religion—and, to be clear, we are not—in ruling on Plaintiffs' claims, the result would be to stop endorsement by permitting endorsement "so long as CFI's members, too, are permitted to solemnize marriages."   *Id.*   This bizarre hypothetical scenario makes it clear that Plaintiffs' lawsuit

is improperly cast as an "establishment" claim.   It is rather, in our judgment, a "free

exercise" claim.

Read in their entirety, the "Religion Clauses" of the First Amendment ban a state[6]

from enacting any law "respecting an establishment of religion, or preventing the free

exercise thereof."   U.S. CONST. amend. I.   These two clauses (the Establishment Clause

and the Free Exercise Clause, respectively), although "frequently in tension," have

considerable "'room for play in the joints' between them."   *Locke v. Davey*, 540 U.S. 712,

718 (2004) (quoting *Walz v. Tax Comm'n*, 397 U.S. 664, 669 (1970)).   Free exercise

analysis requires a court to determine "whether government has placed a substantial

burden on the observation of a central religious belief or practice and, if so, whether a

compelling governmental interest justifies the burden."   *Hernandez v. C.I.R.*, 490 U.S.

680, 699 (1989); *Koger v. Bryan*, 523 F.3d 789, 802 (7th Cir. 2008).   When conducting

this inquiry, the court must be mindful that:

> [n]ever to our knowledge has the Court interpreted the First Amendment to require
> the Government *itself* to behave in ways that the individual believes will further his
> or her spiritual development . . . . The Free Exercise Clause simply cannot be
> understood to require the Government to conduct its own internal affairs in ways
> that comport with the religious beliefs of particular citizens.   Just as the
> Government may not insist that [individuals] engage in any set form of . . .
> observance, so [individuals] may not demand that the Government join in their
> chosen . . . practices.

*Bowen v. Roy*, 476 U.S. 693, 699-700 (1986).

While not completely disregarding the relevance of free exercise to their claim,

---

[6]As noted previously, the First Amendment applies to the states through the Due Process
Clause of the Fourteenth Amendment.

Plaintiffs' cursory treatment of the issue is limited to a single argument, to wit:

> [F]or purposes of the Establishment Clause, *and Free Exercise*, CFI stands on the same footing as organized religion.   If the State of Indiana wishes to allow clergy and other designated persons from organized religions to solemnize marriages, it must allow CFI's trained celebrants to do so as well.   Failure to do represents promotion of a particular religious viewpoint and is unconstitutional.

Pls.' Mem. at 16 (emphasis added).   Later, in rebuttal to Defendants' assertions, Plaintiffs contend that "[t]here is no need to wade into this Free Exercise thicket."   Pls.' Reply at 8. We respectfully disagree; it is clear that Plaintiffs' alleged injuries prompt a free exercise analysis, regardless of whether they have invoked this clause by name in their lawsuit. Plaintiffs have repeatedly argued that the Solemnization Statute prevents them from publicizing their most cherished ethical views and from having meaningful wedding celebrations.   At least two of the plaintiffs (Ms. Landrum and Mr. Kiel) also believe that the statute forecloses their ability to wed in a single ceremony.   *See* Kiel & Landrum Dep. at 36 (expressing the couple's desire not "to have to go before a clerk to make [the] marriage legal . . . and then have to go to [Ms. Wooden]" for another ceremony).   Further, Plaintiffs contend, Indiana's Solemnization Statute denies non-religious couples the ability to marry without "limitations on time and place ceremonies may occur" or "the governmental overtone that the [secular solemnizing] official's presence carries."   Compl. ¶ 30.   These allegations are, if not slightly disingenuous, unsupported by the evidence of record.

To be clear, we in no way intend to question or disparage Plaintiffs' opinions regarding the institution of marriage.   But we must gently remind Plaintiffs that the Free

Exercise Clause is not a guarantee against inconvenience.   Similarly, the Constitution does not obligate the State of Indiana to perform heroics to fashion Plaintiffs' ideal remedy. This construction dates back to 1878, when the Supreme Court held that doctrines of belief may not be "superior to the law of the land, . . . in effect . . . permit[ting] every citizen to become a law unto himself."   *Reynolds v. United States*, 98 U.S. 145, 167 (1878). Because "the very concept of ordered liberty precludes allowing [everyone] to make his own standards on matters . . . in which society as a whole has important interests," *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972), we are not mandated to commandeer the state legislature as Plaintiffs would have us do.

"[T]he Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can extract from the government." *Sherbert v. Verner*, 374 U.S. 398, 412 (1963) (Douglas, J., concurring).   It prevents government from impeding the exercise of religious beliefs or practices "that, by their nature, are fundamental to the particular adherent's religious sect."   *Kelly v. Mun. Ct. of Marion Cnty.*, 852 F. Supp. 2d 724, 731 (S.D. Ind. 1994).   No such interference, at least none concerning Plaintiffs, is implicated in the instant lawsuit.   As noted above, Plaintiffs do not dispute that non-religious persons have numerous avenues through which they may legally wed in Indiana.   Importantly, they recognize their freedom to designate Secular Celebrants as "officiants" at weddings.   No portion of the Solemnization Statute bars any Indiana resident from designing a personalized, life-affirming ceremony to celebrate a marriage.   The statute only prohibits Secular Celebrants (and others who do not qualify

18

under Indiana Code § 31-11-6-1) from signing marriage certificates.   In the context of the

Free Exercise Clause, this is permissible in light of longstanding "Supreme Court

[emphasis on] Government's freedom to act for the common good, even when such actions

do not accord with the . . . preferences of particular individuals."   *Mather v. Vill. of

Mundelein*, 864 F.2d 1291, 1297 (7th Cir. 1989) (Coffey, J., concurring).

  States may indeed impose reasonable regulations on marriage as long as they do not

"significantly interfere with decisions to enter into the marital relationship."   *Zablocki*,

434 U.S. at 386.   Absent a showing that securing a state-approved "solemnizer" would

significantly impede a couple's efforts to marry, we cannot condemn Indiana's legislature

for having written an unreasonable (or unconstitutional) statute.   Rather, we defer to the

legislature's well-established practice of authorizing religious officials, among others, to

solemnize marriages.   *See* Defs.' Br. at 15 (citing relevant statutory amendments from

1857 to 1988).   Defendants explain the State's treatment of marriage as follows:   "[L]ong

before marriage was a civil institution regulated by any of the . . . States, it was a religious

contract . . . . [B]ecause marriage as an institution owes its origins to religious roots, it is

both natural and logical that when state government regulates entry into marriage, it

accommodates those deep religious traditions."   *Id.* at 20.   We believe Defendants' point

is well-taken; "accommodat[ing] the public service" to Americans' diverse spiritual needs

is a familiar concept in federal court.   *Zorach v. Clauson*, 343 U.S. 306, 314 (1952); *see

also Books*, 235 F.3d at 307; *Mather*, 864 F.2d at 1294-95.

  Plaintiffs would apparently like the Court to declare that the State of Indiana has no

business accommodating longstanding religious practices through the Solemnization Statute.   This we cannot do and shall not do.   We previously alluded to the "play between the joints" inherent in the First Amendment and, indeed, a prime example of this flexibility is the tenet that government may accommodate religious groups' free exercise of various traditions and practices.   *Edwards v. Aguillard*, 482 U.S. 578, 618 (1987) ("[V]oluntary governmental accommodation of religion is not only permissible, but desirable.") (citing *Gillette v. United States*, 401 U.S. 437, 453 (1971)).   In several instances, the Supreme Court has even *required* a state to accommodate the beliefs of religious individuals.   *See, e.g.*, *Hobbie v. Unemp't Appeals Comm'n of Fla.*, 480 U.S. 136 (1987); *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707 (1981); *Wisconsin v. Yoder*, 406 U.S. 205 (1972); *Sherbert v. Verner*, 374 U.S. 398 (1963).   Stated otherwise, laws designed to accommodate religion pass constitutional muster when they remove burdens on the free exercise of religion.   *See Cnty. of Allegheny*, 492 U.S. at 601 n.51.   Dispensations such as the Solemnization Statute, made "without sponsorship and without interference," *Wallace v. Jaffree*, 472 U.S. 38, 78 (1985), fall squarely within the parameters of Free Exercise Clause jurisprudence.

In the foregoing analysis, we have also remained mindful of Justice Goldberg's suggestion that "the measure of constitutional adjudication is the ability and willingness to distinguish between real threat and mere shadow."   *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 308 (1963) (Goldberg, J., concurring).   We fail to see how the Solemnization Statute poses a hint of a threat, let alone a real one.   In our view, the State

20

of Indiana is entitled to uphold the idea that marriage is not final upon issuance of a license. By permitting diverse religious groups to place their "stamp of approval" on marriages, this statute preserves "the ability of religious organizations to define and carry out their religious missions."  *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 335 (1987).   Defendants' unmistakable desire to avoid excluding religion from marriage proceedings vis-à-vis the Solemnization Statute is precisely the kind of "benevolent neutrality" which is contemplated by the Free Exercise Clause.   Accordingly, we hold that this statute does not violate the Free Exercise Clause.

Moreover, although Plaintiffs' First Amendment claim does not sound in Establishment Clause jurisprudence, it fails on these grounds as well.   Nothing about Indiana's statutory scheme would prompt a reasonable observer to interpret the Solemnization Statute as state-sanctioned endorsement of religious (over secular) marriage traditions.  *See Elmbrook Sch. Dist.*, 687 F.3d at 857 (Hamilton, J., concurring) (defining the "reasonable observer" as one who is "apprised of the circumstances and history of the disputed governmental practice" and noting that the important inquiry is whether this individual "would conclude that [this governmental practice] conveys a message of endorsement or disapproval of religious faith").   Four categories of people permitted to solemnize marriages under Indiana law—judges, mayors, local clerks or clerk-treasurers, and circuit court clerks—are unambiguously secular.   Furthermore, the fact that several well-known religious sects *are* included in the Solemnization Statute does not establish a *per se* Establishment Clause violation.   Literal construction of the Religion Clauses is

hardly *de rigueur*.   As the Seventh Circuit acknowledged in *Mather v. Village of Mundelein*, 864 F.2d 1291 (7th Cir. 1989), "the [Supreme] Court consistently has declined to take a rigid, absolutist view of the Establishment Clause" because to do so "would undermine the ultimate constitutional objective *as illuminated by history*."   *Id.* at 1294 (quoting *Walz*, 397 U.S. at 671).

Even a fleeting review of First Amendment history reveals the Supreme Court's disinclination to invalidate a statute that merely recognizes religion.   Instead, courts must inquire "whether, *in reality, [the statute] establishes a religion or religious faith*."   *Lynch*, 465 U.S. at 678 (emphasis added); *see also Walz*, 397 U.S. at 669.   We are therefore obligated not to conflate a statute which may have "an incidental religious significance," *Mather*, 864 F.2d at 1295, with one which tends to coerce, indoctrinate, or effectively set up an official state religion.   Having carefully considered the parties' arguments, we find it fairly obvious that the Solemnization Statute does not belong in the latter category.   The statute merely recognizes that, although "marriage is a social relationship subject to state regulation," *Miller v. Morris*, 386 N.E.2d 1203, 1205 (Ind. 1979), people choose to ommence this relationship differently.   Many couples—even those who do not otherwise identify with a particular religious creed—incorporate faith-based practices in their wedding ceremonies.   Thus, to borrow language from the Seventh Circuit, Indiana has "the right and, indeed, the obligation to take into consideration the religious sensibilities of its people and to accommodate that aspect of its citizens' lives in any way that does not offend the strictures of the Establishment Clause."   *Books*, 235 F.3d at 307.

At oral argument, Plaintiffs asserted that one of Defendants' key legal authorities, *Marsh v. Chambers*, 463 U.S. 783 (1983), bears no relevance to the decision before this court.   *See also* Pls.' Reply at 5 ("It would appear obvious that *Marsh* is not apposite to the case here because this is not a case where the State has adopted a non-sectarian religious practice.").   We certainly do not find *Marsh* dispositive of the instant motion, and we are mindful that its holding does not give states *carte blanche* to continue unconstitutional practices simply because they are "time-honored."   *See, e.g.*, *Cnty. of Allegheny*, 492 U.S. at 603 ("*Marsh* plainly does not stand for the sweeping proposition . . . that all accepted practices 200 years old and their equivalents are constitutional today.").   Nonetheless, we do find *Marsh* germane to the extent that it encourages deference to the reasoned judgments of state legislatures and raises the issue of whether the individual alleging injury from the governmental regulation is actually "readily susceptible to religious indoctrination."   *Marsh v. Chambers*, 463 U.S. 783, 792 (1983) (internal citation omitted). Our decision not to disturb Indiana lawmakers' guiding rationale for prescribing the procedures detailed in the Solemnization Statute (and other laws under that title) is, as a result, based partly on the *Marsh* holding.   We find, in our discretion, that it is perfectly acceptable for a state to assert an important interest in ensuring that marriages are properly recorded, as Defendants have[7] in this case.   Specifying ten classes of persons (some

---

[7]The precise language in Defendants' Pretrial Memorandum is as follows:   "The requirement that marriages be solemnized furthers this interest by providing a way for the State to learn whether couples who apply for a marriage license actually go through with the marriage. That the State does not necessarily recognize and record marriages at the time the couple receives the marriage license is an acknowledgment of the fact that marriage has historically been viewed

religious, some secular) who may sign and file marriage licenses is, in this court's view, practical and permissive.   More importantly, because it is a "[r]easonable regulation[] that do[es] not significantly interfere with decisions to enter into the marital relationship," it "may legitimately be imposed."  *Zablocki*, 434 U.S. at 386.

We conclude that the Solemnization Statute is rationally related to the legitimate purpose of alleviating significant governmental interference with pre-existing religious beliefs about marriage.   Additionally, the statute bears a rational relation to the equally reasonable purpose of allowing the government to assume responsibility for the marriage regulation function without ostracizing its religious constituents.   For these and all of the reasons explicated above, we find that Plaintiffs' First Amendment claim—whether grounded in Free Exercise Clause or Establishment Clause jurisprudence—does not succeed on the merits.   We therefore decline to issue permanent injunctive relief by declaring the Solemnization Statute unconstitutional under the First Amendment, or by ordering the Indiana General Assembly to explicitly mention Plaintiffs in the Solemnization Statute.   To rule otherwise "would be to find in the Constitution a requirement that the government show a callous indifference to religious groups . . .[,] preferring those who believe in no religion over those who do believe."  *Zorach*, 343 U.S. at 314.

### **Equal Protection Claim**

---

as a ceremonial or ritualistic event, to be authorized by government[,] to be sure, but, based on the preferences of the couple, not to become legally final until the moment when it is also consecrated by a religious ceremony."   Defs.' Br. at 14.

Moving on from their First Amendment challenge, Plaintiffs also argue that the Solemnization Statute violates the Fourteenth Amendment's Equal Protection Clause because it "sets up an obvious classification" that is "irrational and arbitrary" as applied to CFI-Indiana.   The Equal Protection Clause of the Fourteenth Amendment precludes any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws," which the Supreme Court has interpreted as a direction to treat all similarly situated persons alike.   U.S. CONST. amend. XIV, § 1; *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).   Our first question in deciding whether the Solemnization Statute violates the Equal Protection Clause is whether it targets a suspect class or concerns a fundamental right.   *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 637 (7th Cir. 2007).   If the statute does either of these things, the Constitution requires it to be narrowly tailored to facilitate a compelling governmental interest.   *Id.* (citing *Krislov v. Rednour*, 226 F.3d 851, 863 (7th Cir. 2000)).   However, in the absence of such circumstances, the court must apply the rational basis test.   This test is highly deferential; state legislation is "presumed to be valid[] and will be sustained as long as the classification drawn . . . is rationally related to a legitimate state interest."   *Evans v. City of Chi.*, 873 F.2d 1007, 1015 (7th Cir. 1989) (citing *City of Cleburne*, 473 U.S. at 440) (internal quotation marks omitted).

In this case, Plaintiffs' claims must be analyzed using the rational basis test. Nothing in the record indicates that Ms. Wooden, Ms. Landrum, Mr. Kiel, members of CFI-Indiana, or Secular Celebrants (or, for that matter, any couple hoping to be married by

a Secular Celebrant) comprise a "suspect class."   This group has no "immutable characteristic determined solely by the accident of birth," *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973); moreover, it is not "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection."   *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973).   Nor does the set of facts in this case "concern a fundamental right" of the magnitude that justifies a higher level of scrutiny.   To be sure, the Equal Protection and Free Exercise Clauses work in tandem to prevent arbitrary discrimination based on religion.   *See Grayson v. Schuler*, 666 F.3d 450, 452 (7th Cir. 2012); *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988).   If the statute's classifications are non-arbitrary, "the religious dimension of the [alleged] discrimination is governed by the [R]eligion [C]lauses of the First Amendment, leaving for the [E]qual [P]rotection [C]lause only a claim of arbitrariness unrelated to the character of the activity allegedly discriminated against."   *Reed*, 842 F.2d at 962.   Our analysis above indicates, therefore, that Plaintiffs cannot prevail on their equal protection claim as well.

We have already determined that the Solemnization Statute does not arbitrarily discriminate on the basis of religion.   Accordingly, Plaintiffs' Equal Protection claim must be "examined in light of the Free Exercise Clause's rational basis review," *Wilkins v. Walker*, No. 09-cv-0457-MJR-SCW, 2012 WL 253442, at *5 (S.D. Ill. Jan. 26, 2012), with the extra caveat that many ostensibly neutral rules are constitutional even though they incidentally burden a specific religious practice.   *See Koger*, 523 F.3d at 796.   Plaintiffs'

unwavering position throughout this lawsuit has been that Defendants have no rational reason to exclude Secular Celebrants from the Solemnization Statute, which causes the statute to run afoul of the Equal Protection Clause. *See* Pls.' Mem. at 19 ("Certainly, numerous rational bases can be hypothesized to justify the statute . . . . However, there is no rational reason to place CFI, its followers, and its trained celebrants in the category of those who may not obtain the benefit of the statute."); Pls.' Reply at 17 ("In a very real sense[, the Solemnization Statute] erects a barrier to persons entering into marriage . . . with no justification. This violates equal protection."). Nevertheless, this argument is unpersuasive in light of binding precedent that "[w]here a plaintiff's First Amendment Free Exercise claim has failed, the Supreme Court has applied only rational basis scrutiny in its subsequent review of an equal protection fundamental right to religious free exercise claim based on the same facts." *St. John's United Church of Christ*, 502 F.3d at 638 (citing *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974); *Wirzburger v. Galvin*, 412 F.3d 271, 282-83 (1st Cir. 2005)).

Our ruling on Plaintiffs' First Amendment claim essentially eviscerates their Equal Protection claim. In addition, Plaintiffs' proffered evidence and statements at oral argument give us no pause regarding the Solemnization Statute's validity. We therefore will not disturb the presumption that this statute *is* a valid, nondiscriminatory exercise of the State's power. Defendants have supplied adequate rational justifications for the statute: accommodating various faith traditions, maintaining official record-keeping systems, and ensuring that marriage ceremonies are meaningful, *inter alia*. Further,

27

because we have accepted the parties' stipulation that CFI is not a religion, we must dismiss Plaintiffs' addled contention that "[organized religion and CFI] are all in the same class for purposes of equal protection."   Pls.' Mem. at 20.   They are not the same, and, more importantly, the system of classification the State of Indiana has chosen is rationally related to a legitimate governmental interest.   This is all that is required for the Solemnization Statute to provide equal protection of the laws.   *See Amos*, 483 U.S. at 338-39.

Laws aimed at accommodating religious practices need not "come[] packaged with benefits to secular entities."   *Amos*, 483 U.S. at 338.   Accordingly, and for all of the reasons stated in this entry, we find that Plaintiffs' Equal Protection claim does not succeed on the merits.   As before, we decline to issue permanent injunctive relief by declaring the Solemnization Statute unconstitutional under the Equal Protection Clause, or by ordering the legislature to explicitly mention Plaintiffs in the Solemnization Statute.

### Additional Factors

In light of our finding that Plaintiffs have not succeeded on the merits of their First Amendment or Equal Protection claim, it is clear that permanent injunctive relief may not issue.   The Seventh Circuit has explained that "likelihood of success on the merits will often be the determinative factor" in the context of preliminary injunction requests grounded in the First Amendment.   *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004).   This is true because there is generally no adequate remedy at law when the government impermissibly violates the First Amendment, *see Elrod v. Burns*, 427 U.S.

28

347, 373 (1976), and because "it is always in the public interest to protect First Amendment

liberties."   *Joelner*, 378 F.3d at 620.   Having determined that the Solemnization Statute

does not violate the First Amendment, these considerations are irrelevant.   Given the

higher standard of proof required to support a permanent injunction, we believe Plaintiffs'

failure to succeed on the merits *is* determinative.   Plaintiffs' impassioned advocacy,

however principled and eloquent, simply does not justify the extraordinary remedy of a

permanent injunction.

### Conclusion

Because Plaintiffs cannot demonstrate actual success on the merits in either of their

stated causes of action, their remaining arguments are wholly unavailing.   As a result, and

pursuant to guiding case law, Plaintiffs' motion for permanent injunctive relief must be

DENIED.   Final judgment shall now issue in conjunction with this entry.

IT IS SO ORDERED.

Date: _____ 11/30/2012 _____          _____
                                      SARAH EVANS BARKER, JUDGE
                                      United States District Court
                                      Southern District of Indiana

Copies to:

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Beth Ann Garrison
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
beth.garrison@indy.gov

Steven S. Fox
LEGAL DIRECTOR, CENTER FOR INQUIRY
sfox@centerforinquiry.net

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org

Heather Hagan McVeigh
OFFICE OF THE ATTORNEY GENERAL
heather.mcveigh@atg.in.gov

Thomas M. Fisher
OFFICE OF THE ATTORNEY GENERAL
tom.fisher@atg.in.gov

Ashley Tatman Harwel
OFFICE OF THE ATTORNEY GENERAL
ashley.harwel@atg.in.gov